S09A0006. TUVIM et al. v. UNITED JEWISH COMMUNITIES, INC. et al.
(680 SE2d 827)

MELTON, Justice.

Mark and Reid Tuvim (the "Tuvims"), individually and as administrators of the estate of Lynn Tuvim, their deceased mother, sued United Jewish Communities, Inc. ("UJC") and various banks, seeking injunctive relief and the cancellation of certain contracts with the banks (i.e., "payable on death" certificates of deposit; a trust account, and Series I and Series EE U. S. savings bonds) which listed UJC as the third-party beneficiary. The Tuvims sued on the grounds that Lynn lacked the mental capacity to contract and that UJC, as a corporation, is not an eligible "payable on death" beneficiary. UJC answered and counterclaimed for the imposition of a constructive trust on the grounds of cy pres[1] and unjust enrichment,

---

[1] This legal doctrine is defined at OCGA § 53-12-113, which states that "[i]f a valid charitable bequest, trust, or gift cannot be executed in the exact manner provided by the testator, settlor, or donor, the superior court will exercise equitable powers in such a way as will as nearly as possible effectuate the intention of the testator, settlor, or donor."

should it be found to be an ineligible beneficiary. Various injunctive and interpleader orders issued, and, after a hearing, the trial court issued orders largely in UJC's favor. For example, the trial court, among other things, denied the Tuvims' motion for summary judgment; granted UJC's motions to exclude the Tuvims' expert testimony regarding Lynn's alleged lack of mental capacity; ruled that the Tuvims did not carry their burden of showing that Lynn lacked capacity to contract; ruled that UJC, as a corporation, was a qualified "payable on death" beneficiary; and ruled, alternatively, that if a corporation was an ineligible beneficiary, a constructive trust would be imposed for UJC's benefit pursuant to the unjust enrichment or cy pres doctrine. The Tuvims appeal, arguing that (1) UJC is not a qualified beneficiary on the relevant financial instruments, (2) the trial court erred in imposing a constructive trust, and (3) the trial court erred in excluding the testimony of the Tuvims' expert. For the reasons that follow, we reverse.

1. Pursuant to the Financial Institutions Code of Georgia (OCGA Title 7, Chapter 1), a "payable on death payee" ("P.O.D. payee") must be "a *person* designated on a P.O.D. account as one to whom the account is payable on request after the death of one or more persons." (Emphasis supplied.) OCGA § 7-1-810 (11). Similarly, a beneficiary on a trust account must be "a *person* named in a trust account as one for whom a party to the account is named as trustee." (Emphasis supplied.) OCGA § 7-1-810 (2). A "person" is defined in the Financial Institutions Code as "an individual, trust, general or limited partnership, unincorporated association (except a joint-stock association), or any other form of *unincorporated* enterprise." (Emphasis supplied.) OCGA § 7-1-4 (26).

Here, Lynn named UJC, an incorporated enterprise, as the P.O.D. payee on five certificates of deposit, and as the purported beneficiary on a trust account. However, the plain language of the relevant statutory provisions in the Financial Institutions Code makes clear that a corporation such as UJC is neither a proper P.O.D. payee nor a proper trust account beneficiary. Accordingly, as a matter of law, UJC cannot be deemed a proper P.O.D. payee or trust account beneficiary here. OCGA §§ 7-1-4 (26); 7-1-810 (2), (11). Indeed, contrary to any legislative intent to *include* incorporated entities such as UJC as proper P.O.D. payees and trust account beneficiaries, the Legislature has specifically chosen to *exclude* such entities from the list of "persons" qualified to serve in such capacity on the financial instruments involved here.

With respect to the U. S. Savings bonds involved in this case, federal regulations make clear that UJC is also not a proper P.O.D. payee on those financial instruments. While a corporation may be an original, registered owner of a Series EE savings bond (see 31 CFR §

353.7 (c) (2)), a beneficiary on such a bond must be an *"individual* named in the registration of [the] security." (Emphasis supplied.) 31 CFR § 351.3. The federal regulation goes on to clarify that "[i]ndividual means a natural person. [It] does not mean an organization, representative, or fiduciary." Id. Further, with respect to Series I savings bonds, such bonds "may be registered in the name of one *individual* payable on death to another." (Emphasis supplied.) 31 CFR § 360.6 (a) (3). Although a definition for "individual" is not expressly included in the specific regulation relating to Series I bonds, the definition provided for the term "individual" for Series EE bonds is instructive. The other "individual" to whom benefits may be payable on death for a Series I bond must again be "a natural person . . . [and] not . . . an organization, representative, or fiduciary." 31 CFR § 351.3. Thus, because UJC, as a corporation, is not a qualified "individual" to be listed as a P.O.D. beneficiary on the Series EE and Series I bonds, the trial court erred in determining that UJC could properly be named as such a beneficiary.

2. The trial court further erred in applying the doctrine of cy pres to impose a constructive trust in UJC's favor on the financial instruments at issue. As mentioned above, the doctrine of cy pres provides that "[i]f a valid charitable bequest, trust, or gift cannot be executed in the exact manner provided by the testator, settlor, or donor, the superior court will exercise equitable powers in such a way as will *as nearly as possible* effectuate the intention of the testator, settlor, or donor." (Emphasis supplied.) OCGA § 53-12-113; *Trammell v. Elliott*, 230 Ga. 841, 846 (5) (199 SE2d 194) (1973). Assuming that Lynn was attempting to make a charitable donation to UJC by naming it as a beneficiary on the financial instruments involved here, as mentioned in Division 1, the manner in which Lynn attempted to make such a donation was invalid as a matter of law.[2] Thus, Lynn's donation could not be legally executed in the *exact* manner that she ostensibly intended. This does *not* mean, however, that the trial court could then exercise equitable powers to specifically accomplish through cy pres *exactly* what could not be accomplished legally. See *Trammell*, supra, 230 Ga. at 848 (5) (cy pres properly applied to *"exclud[e]* the illegal racial classification from [an otherwise] charitable grant") (emphasis supplied). See also OCGA § 53-12-113. While the trial court may have been able to apply the doctrine of cy pres to "as nearly as possible effectuate" Lynn's intentions by, for example, allowing Lynn's charitable gift to go to

---

[2] We note that Lynn did not make a bequest to UJC through a will, but merely named UJC as a purported beneficiary on certain financial instruments governed by the Financial Institutions Code of Georgia and certain federal regulations. It is therefore irrelevant whether or not Lynn could have made a valid charitable bequest to UJC through a will. Such a bequest simply was not made here.

some authorized entity that served much the same function as UJC, the trial court did not do that here. The trial court specifically imposed a constructive trust in favor of *UJC* on the financial instruments involved here. This was error. Indeed, the trial court's use of cy pres in a manner that would effectuate a payment that expressly violates the law turns the doctrine of cy pres on its head.

To the extent that the trial court attempted to apply the doctrine of unjust enrichment to this case, it also erred. "Unjust enrichment applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." (Citations and punctuation omitted.) *Engram v. Engram*, 265 Ga. 804, 807 (2) (463 SE2d 12) (1995). Here, the Tuvims do not receive any sort of unjust enrichment based on their mother's failure as a matter of law to make UJC an appropriate beneficiary on the relevant financial instruments in this case. In light of Lynn's failure, the financial instruments involved here would simply become a part of her estate. Under such circumstances, any financial benefit that the Tuvims would be entitled to receive would involve application of the laws of intestacy, not any sort of unjust enrichment.

3. In light of our holdings in Divisions 1 and 2, which reverse the trial court's decision to allow UJC to be named as a beneficiary under the relevant financial instruments, we need not address the Tuvims' remaining enumeration.

*Judgment reversed. All the Justices concur, except Benham and Carley, JJ., who dissent.*

CARLEY, Justice, dissenting.

I agree with Division 1 of the majority opinion. However, I do not agree with the reasoning of Division 2, and respectfully dissent to the reversal of the trial court's judgment.

> The doctrine of cy pres is codified at OCGA § 53-12-113, which provides that "(i)f a valid charitable bequest, trust, or gift cannot be executed in the exact manner provided by the testator, settlor, or donor, the superior court will exercise equitable powers in such a way as will as nearly as possible effectuate the intention of the testator, settlor, or donor."

*Baker v. Merrill Lynch Trust Co.*, 286 Ga. App. 767, 770 (650 SE2d 296) (2007).

> As a general rule, the doctrine of cy pres is applied in cases (1) where there is the presence of an otherwise valid

charitable grant or trust; *that is, one that has charity as its purpose and sufficiently offers benefits to an indefinite public*; (2) where the specific intention of the settlor *may not be legally or practicably carried into effect*; and (3) where there is exhibited a general charitable intent on the part of the settlor. [Cits.] (Emphasis supplied.)

*Trammell v. Elliott*, 230 Ga. 841, 846 (5) (199 SE2d 194) (1973).

In Division 2 of its opinion, the majority concludes that the cy pres doctrine does not apply to this case. That conclusion is based on a misinterpretation of the phrase "valid charitable bequest, trust or gift." The majority misconstrues this phrase as requiring a *legal* charitable bequest, stating,

as mentioned in Division 1, the manner in which [the decedent] attempted to make such a donation was invalid as a matter of law. . . . Indeed, the trial court's use of cy pres in a manner that would effectuate a payment that expressly violates the law turns the doctrine of cy pres on its head. (Maj. Op., p. 634)

However, as explained by *Trammell v. Elliott*, supra, a valid charitable bequest is not a legal bequest, but is one that has charity as its purpose and benefits the public. Indeed, as expressly recognized by the second *Trammell* factor, the intended bequest may very well be one that cannot legally be carried into effect. Thus, contrary to the majority's rationale, the fact that a charitable gift cannot be legally carried out does not render the gift invalid, and instead is a factor to be considered in determining the applicability of the cy pres doctrine.

"In determining at the outset whether there is exhibited a valid charitable purpose, the court is to look to [OCGA § 53-12-110] wherein are listed the legitimate subjects of charity in Georgia." *Trammell v. Elliott*, supra. Those charitable subjects include the relief of poverty, the advancement of education, the advancement of of ethics and religion, and the advancement of health. OCGA § 53-12-110 (1)-(4). In this case, the decedent's clear intent was to donate various financial instruments to United Jewish Appeal, which is now known as United Jewish Communities, Inc. Moreover, evidence presented at trial shows that United Jewish Communities is a national charity which provides humanitarian relief, including food, medicine and education, to the young, elderly, sick, poor, disabled and disadvantaged. In fact, at trial, counsel for the Tuvims expressly stipulated that United Jewish Communities is a charity which offers benefits to an indefinite public.

Under these circumstances, it is apparent that the decedent made a valid charitable donation. The fact that it cannot legally be carried into effect for the reasons explained by Division 1 of the majority opinion does not turn the cy pres doctrine "on its head," but is precisely why the doctrine should be applied in this case. "The purpose of the doctrine of cy pres has always been to effectuate, rather than to frustrate, the [donor's] general charitable intent. [Cit.]" *Crisp Area YMCA v. NationsBank*, 272 Ga. 182, 183 (526 SE2d 63) (2000). Because the trial court properly exercised its equitable powers in order to effectuate the decedent's valid charitable intent, its judgment should be affirmed.

I am authorized to state that Justice Benham joins in this dissent.

DECIDED JUNE 15, 2009 —
RECONSIDERATION DENIED JUNE 30, 2009.

*Roger C. Wilson*, for appellants.
*Stites & Harbison, James T. White, Bailey Davis, C. Lee Davis, Gaslowitz Frankel, Adam R. Gaslowitz, Craig M. Frankel, LeAnne M. Gilbert, Millie Baumbusch, Parker, Hudson, Rainer & Dobbs, Nancy H. Baughan*, for appellees.